**TEAMSTERS LOCAL UNION NO. 273, and Gary Grandstaff, Plaintiffs,**

v.

**CSX BECKETT AVIATION, INC. Aero Services International, Inc., Defendants.**

Civ. A. No. 86–1211.

United States District Court, W.D. Pennsylvania.

July 7, 1988.

Stephen M. Jordan, Sandra Kushner, Pittsburgh, Pa., for plaintiffs.

John J. Repcheck, Pittsburgh, Pa., Michael F. Kraemer, Gale P. Ragsdale, Philadelphia, Pa., for defendants.

OPINION

GERALD J. WEBER, District Judge.

Plaintiff Grandstaff, by his Union, challenges defendants' decision to discharge him from employment. Plaintiffs allege that the discharge violated the Labor Management Relations Act, 29 U.S.C. § 185 in that defendants did not have "just cause" for dismissal as required by the

collective bargaining agreement. The parties have filed cross-motions for summary judgment with briefs and evidentiary material. There are no disputed issues of fact and for the reasons stated below we conclude that summary judgment in favor of defendants is appropriate.

## FACTS

Aero Services operates an airline service facility at the Greater Pittsburgh International Airport. Its customers are the owners and pilots of private aircraft. Defendant Aero was later acquired by CSX Beckett Aviation and plaintiffs have sued both corporations. We will refer to the defendants collectively as the Company.

Plaintiff Grandstaff began work with the Company on June 1, 1984 as a line service technician servicing and refueling aircraft. At all times relevant here, Grandstaff was covered by a collective bargaining agreement between the Teamsters and the Company. That agreement provides at Article XVII Section 1 that an employee may only be discharged for "just cause".

Grandstaff's personnel record reveals a number of disciplinary reports and warnings from supervisors. On November 21/22, 1985, Grandstaff reported to work without his uniform and was advised of company policy requiring employees to wear uniforms on the job at all times. Despite this admonition, Grandstaff came to work 3 days later again out of uniform.

On December 27, 1985, Grandstaff received a warning from his supervisor concerning his excessive absenteeism, his practice of leaving before the end of his shift, and his disregard for his job performance. The supervisor's report indicates that Grandstaff responded to the supervisor with an obscenity and then walked out. Grandstaff had received similar warnings in the past.

On January 13, 1986, Grandstaff was refueling an aircraft when he got into a heated discussion with the customer, the aircraft's pilot. Grandstaff concluded the discussion by turning away and calling the pilot a "jag-off", a common Pittsburgh epithet with an obscene origin. The pilot filed a complaint with the Company and Grandstaff was then discharged.

Grandstaff does not deny any of the incidents described above and no evidentiary material contesting them has been submitted.

In accord with the collective bargaining agreement the parties pursued the matter through the grievance process without resolving the dispute. The Union then demanded arbitration but the Company, exercising its right under the contract, refused to submit to arbitration. This suit followed.

## DISCUSSION

The issue, simply put, is whether the Company had just cause to dismiss Grandstaff. Grandstaff does not deny the events described above including the series of infractions he committed in the 2 months prior to discharge. The only question is whether these events satisfy the standard of just cause.

We focus first on the precipitating events of January 13, 1986. There is no question that the use of abusive or obscene language directed toward a customer is a serious matter. Several arbitrators have considered similar conduct and have held it to be grounds for dismissal. See, *H.E. Miller Oldsmobile* and *Machinists Local 778*, 81 LA 1112 (Westbrook 1983) (mechanic told customer "I don't give a f___ where you take your car for service"); *Great Atlantic & Pacific Tea Co., Pittsburgh Division* and *Food Employees Local 590*, 71 LA 805 (Nernberg 1978) (checkout clerk called a customer's children "brats" and told another customer not to come back); *Southern Bell Telephone & Telegraph Co.* and *Communication Workers*, 75 LA 409 (Seibel 1980) (telephone repairman made harassing and obscene telephone calls to a customer); *Alumax Extrusions, Inc.* and *Steelworkers Local 8775*, 81 LA 722 (Miller 1983) (employee made obscene drawings on a door visible to customers and other employees).

Plaintiffs seek to distinguish several of these decisions on the basis that, unlike the

present case, the labor agreement in those cases contained a specific prohibition against cursing to a customer. The absence of a specific prohibition is of course not determinative. In fact the agreement in issue here does not purport to define just cause or set out a catalogue of infractions which may serve as grounds for dismissal. Certainly the use of abusive or obscene language directed to a customer is a serious infraction and, as these other decisions and other labor agreements would indicate, is ample basis for dismissal.

Plaintiffs also argue that Grandstaff did not intend for the pilot to hear his epithet. First of all we doubt this assertion because Grandstaff admittedly uttered the word aloud in the presence of the pilot. But in any event, intent is not at issue. The customer heard the remark. It was certainly foreseeable that he would hear the remark. The customer understood that the epithet referred to him and he was offended. The risk of damage to the company's business is not diminished by the fact that the employee hoped the customer would not hear the abusive reference, and the company is entitled to protect itself against the recurrence of such behavior.

Finally, plaintiffs ignore the rest of Grandstaff's disciplinary history. Grandstaff had committed a number of serious infractions in the 2 months preceding his discharge. On one occasion he came to work out of uniform after having been admonished only several days earlier about the same offense! He had received repeated warnings concerning excessive absenteeism, leaving before completion of his shift and disregard for his job performance. After being warned again by his supervisor on December 27, 1985, Grandstaff told the supervisor to "piss off".

These incidents, if not individually, then collectively, constitute ample grounds for discharge on a just cause standard. These infractions all occurred within the 2 months prior to discharge and Grandstaff does not deny them. The repeated infractions evidence an unwillingness to conform his conduct to the company's legitimate require-

ments. Such conduct need not be tolerated by an employer.

In their cross-motion for summary judgment plaintiffs provide a copy of the decision of the Unemployment Compensation Board of Review awarding unemployment benefits to Grandstaff. It is argued that this decision is entitled to collateral estoppel effect, preventing the Company from defending the present suit. We note, however, that the issue in the administrative proceedings differs greatly from the issue here. Under the Unemployment Compensation Act, Grandstaff could only be denied benefits if he was guilty of "willful misconduct". 43 Pa.Stat.Ann. § 802(e). Under the labor agreement, Grandstaff could be discharged for "just cause", which is not limited to willful misconduct. Also, the Board's decision is limited to a consideration of the January 13, 1986 incident. In considering appropriate disciplinary measures the Company is entitled to consider prior disciplinary history. Collateral estoppel does not apply because the issues are dissimilar. We do not rule on defendants' contention that administrative decisions may not be accorded collateral estoppel effect in court actions.

For the reasons stated summary judgment in favor of defendants is appropriate. An order will be entered.